UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEANDRE SHOWERS,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | No. 2:16-cv-00053 CKD<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born February 13, 1987, applied on March 10, 2010 for SSI, alleging disability beginning January 1, 1992. Administrative Transcript ("AT") 179-196. Plaintiff alleged that he was unable to work due to mental health problems and asthma. AT 144, 153. His claims were denied initially and on reconsideration, and plaintiff requested a hearing before an administrative law judge (ALJ). AT 138, 144-151, 153-156. Following the hearing, in two separate decisions

1

dated March 9, 2012, the ALJ found that plaintiff was not disabled prior to turning age 22. AT 43-51, 55-64. Upon review, the Appeals Council vacated these decisions and remanded the case to the ALJ. AT 36-39. Following a second hearing on November 13, 2013, the ALJ issued a decision on April 21, 2014 finding plaintiff not disabled[1] before February 12, 2009, prior to turning 22. AT 30. However, the ALJ's decision was partially favorable to plaintiff, finding him disabled beginning January 1, 2013. AT 31. Plaintiff appealed only the unfavorable portion of the decision, which the Appeals Council affirmed. AT 2-4.

In his April 2014 decision, the ALJ made the following findings (citations to 20 C.F.R. omitted):

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

1. Born on February 13, 1987, the claimant had not attained age 22 as of January 23, 2009, the alleged onset date.

2. The claimant has not engaged in substantial gainful activity since January 23, 2009, the alleged disability onset date.

3. The claimant has had the following severe impairments since his alleged disability onset date of January 23, 2009: bipolar disorder, borderline intellectual functioning and asthma.

4. Prior to January 1, 2013, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, prior to January 1, 2013, the claimant was able to lift/carry 50 pounds occasionally and 25 pounds frequently, to sit for up to six hours an eight hour day, and to stand/walk for up to six hours in an eight hour day. Prior to January 1, 2013, the claimant's residual functional capacity was further reduced by postural limitations restricting the claimant to no more than occasional climbing of ramps and stairs, and no more than occasional stooping, balancing, crouching, crawling, or kneeling. Prior to January 1, 2013, the claimant also was not able to climb ladders/scaffolds or ropes, and he also had environmental limitations where he must have avoided concentrated exposure to dusts, fumes, odors and poor ventilation. Prior to January 1, 2013, the claimant also had mental limitations that restricted him to working with no more than simple one to two step tasks that did not involve production rate or assembly line work and that did not involve working with the public.

6. The claimant has no past relevant work.

7. The claimant was born on February 13, 1987 and was 21 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date, and he is currently 27 years old.

8. The claimant has at least a high-school education and is able to communicate in English.

9. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work.

10. Prior to January 1, 2013, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant was able to perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, at any time prior to February 12, 2009, the date he attained age 22.

12. Beginning on January 1, 2013, the claimant's mental condition

3

worsened to the point that the severity of the combination of his severe asthma, bipolar disorder and borderline intellectual functioning has met the criteria of section 12.04.

13. The claimant was not disabled prior to January 1, 2013 but became disabled on that date and has continued to be disabled through the date of this decision.

14. The claimant's substance use disorder is not a contributing factor material to the determination of disability.

AT 17-34.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled prior to 2013: (1) the ALJ erred in finding that plaintiff did not satisfy the listings criteria and thus did not become disabled until 2013; (2) the ALJ improperly credited the opinion of a non-examining doctor over the opinion of treating doctors; and (3) the ALJ erred in discounting the testimony of plaintiff and his mother.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not

affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

    A.  Presumptively Disabling Impairment

Plaintiff contends that he satisfied Listing 12.05C, and that the ALJ's decision "very seriously misunderstood [his] level of functioning for the critical pre-age-22 years." ECF No. 15 at 10.  Plaintiff cites a "record of special education, academic failure, and other problems before age 22" prior to the disability onset date of January 1, 2013.  (ECF No. 20 at 4.)

The Social Security Regulations "Listing of Impairments" is comprised of impairments to certain categories of body systems that are severe enough to preclude a person from performing gainful activity.  Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all the requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).  It is the disability claimant's burden of proving that his or her impairments meet or equal the required elements of a Listing.  Tackett v. Apfel, 180 F. 3d 1094, 1099 (9th Cir. 1999).

To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to his claim.  To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment "most like" the claimant's impairment.  20 C.F.R. § 404.1526.  A finding of equivalence must be based on medical evidence only.  20 C.F.R. § 404.1529(d)(3).

The Listings under 12.05 describe intellectual disabilities consisting of a "significant subaverage general intellectual functioning with deficits in adaptive functioning initially

manifested during the developmental period," i.e. the onset of the impairment occurred before the individual was age 22. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. The Ninth Circuit has explained that

> Listing 12.05C has three main components: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 to 70; and (3) a physical or mental impairment causing an additional and significant work-related limitation.

Kennedy v. Colvin, 738 F.3d 1172, 1176 (9th Circ. 2013). Plaintiff has the burden of proving he has an impairment that satisfies these criteria Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2004).

At step three of his decision, the ALJ wrote:

> Because the claimant suffers from a severe mental condition with symptoms of schizophrenia, bipolar disorder and poor intellectual and academic functioning, the undersigned has carefully considered whether the severity of his impairments has met or equaled the [listings criteria] found in Section 12.03, 12.04 and 12.05 . . . at any time prior to January 1, 2013[.] Despite the evidence of psychotic symptoms with auditory and visual hallucinations, delusions, extreme mood swings and manic episodes, the undersigned finds that prior to January 1, 2013, the claimant's mental condition did not reach listing level severity.

AT 22. The ALJ found that prior to 2013, plaintiff "has had at most mild to moderate restrictions in his activities of daily living, moderate difficulties in maintaining social functioning, and moderate deficiencies of concentration, persistence, or pace." The ALJ further found that "there is no evidence that [plaintiff] experienced repeated episodes of decompensation" or could not function "outside of a highly supportive living arrangement" prior to January 1, 2013. AT 22-23.

The ALJ gave "substantial weight" to the opinion of psychiatrist Dr. John Simonds, who testified at the November 1, 2011 hearing. AT 23, 739-777. The ALJ cited Dr. Simonds' testimony as to "several gaps in the claimant's mental health treatment prior to January 1, 2013" and his testimony that "there was not enough medical support to find that the severity of the claimant's mental condition met or equaled listing level severity" before 2013. AT 23, 707-708. However, Dr. Simonds testified, "somewhere around January 2013," the record evidenced "problems with anger and hallucinations [and] manic symptoms," along with a "low IQ and

6

difficulty with making decisions on simple tasks, and then the inpatient care with the manic symptoms in October 2013." AT 707-708. Dr. Simonds concluded that plaintiff met the listing criteria as of January 2013. Prior to that, he opined, plaintiff would have been limited to simple tasks due to his I.Q. of 66. AT 708.

In evaluating whether plaintiff was presumptively disabled, the ALJ also gave "much consideration" to plaintiff's "activities of daily living and other reports concerning his functioning during this period." AT 23. Cited records include a "pre-participation physical examination to play competitive basketball" that found plaintiff to have no psychiatric abnormalities and cleared him for the sport in 2009, when he has 21 years old. AT 23; see 520-523.

The ALJ also cited a 2009 medical report created when plaintiff sought treatment for a hand injury from playing basketball. The report notes that plaintiff "works at ATT and attends school." AT 523. The ALJ cites this as evidence that, in 2009, plaintiff was "working at AT&T while also attending school." AT 23. However, in his motion for summary judgment, plaintiff characterizes this statement as a "lie" and a "whopper" plaintiff told during a routine physical exam. (ECF No. 15 at 12.) In fact, plaintiff's total earnings for 2009 were $121.76; the previous year, he earned $77.35. AT 175. Aside from his onetime statement, there is no evidence that plaintiff worked for AT&T in 2008 or 2009. Yet the ALJ cites this statement again in his credibility determination, noting that plaintiff "was not entirely forthcoming with respect to [his] work history, noting at one office visit that he worked for AT&T." AT 28.

Plaintiff's IQ score satisfies the 12.05C criteria. See AT 24. As to "deficits in adaptive functioning initially manifested before age 22," the ALJ wrote that, although plaintiff attended special education classes in high school and had serious academic problems, he reported that "he graduated high school, attended college on a basketball scholarship, and was six months shy of graduating college." AT 24; see AT 373, 617. However, as with the AT&T job, plaintiff's motion characterizes these statements about college and a basketball scholarship as "fantasies" and asserts that "the entries at 373 and 617 reflect Mr. Showers's delusional grandiosity." (ECF No. 15 at 9.)

////

7

The first of these pages notes plaintiff's statements in 2013 that "[h]e graduated from high school and went on to attend college. He had a basketball scholarship at Alabama and later transferred to the University of Arizona. He was approximately six months shy of graduation." AT 373. The second is a 2010 note that plaintiff attended "Franklin HS then CSUS, now going to Arizona State for Pharm Tech." AT 617. At the hearing, plaintiff testified that he did not go to CSUS after high school and went to college in Arizona for "a summer program and that was it." AT 744. As to Arizona State, plaintiff testified that he "wasn't even there in 2010." AT 744.

In his motion, plaintiff cites records showing he failed the high school exit exam, as well as special education records noting a learning disability. AT 212-214, 226. Plaintiff also cites records showing that in 2006 and 2007, when he was 19 and 20 years old, he enrolled in five semesters of junior college in Sacramento and failed or dropped every class. AT 689-690. Plaintiff argues that the only affirmative evidence of plaintiff's post-high school education is "of utter failure in the local junior college" (ECF No. 15 at 9), and that the ALJ mistook plaintiff's grandiose statements in the record for truth. See AT 479 (plaintiff's treating therapist opines in 2010 that plaintiff "is fully and permanently disabled due to his diagnosis of paranoid schizophrenia. Mr. Showers experiences frequent and intense delusions (though he can present well for limited periods of time).").

Defendant points out that a claimant cannot meet listing criteria by relying on the "overall functional impact" of his impairments. Kennedy, 738 F.3d at 1176. However, if the veracity of several statements the ALJ cites in determining plaintiff's abilities prior to age 22 is in question, the finding of no presumptive disability cannot be said to be grounded in substantial evidence.

B. Credibility

A related issue is the ALJ's assessment of plaintiff's and his mother's credibility as to plaintiff's ability to function prior to 2013. Plaintiff asserts that, in the RFC determination, the ALJ erred in finding plaintiff and his mother not entirely credible.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an

explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

At step four, the ALJ found that plaintiff's statements "as well as those from his mother, Ms. Dixon, concerning the intensity, persistence and limiting effect of [his] symptoms prior to 2013 are not entirely credible.  Moreover, the undersigned points out that several inconsistent statements made by the claimant and his mother discount their credibility."  AT 27.  The ALJ cited evidence that, despite Ms. Dixon's statements that plaintiff did not use marijuana or alcohol

in her home (AT 721), the record was "replete with indications of both regular alcohol and marijuana use." AT 27; see AT 339, 352, 433, 439, 486, 678. The ALJ also noted evidence of plaintiff's noncompliance with medication. AT 27; see AT 346, 360, 491, 493. The ALJ further noted that plaintiff "failed to show up at his scheduled consultative examination, has been disrespectful during a psychological evaluation where he refused to stop playing a video game on his cellphone and he has not been entirely forthcoming with respect to his work history, noting at one office visit that he worked for AT&T." AT 27-28; see AT 199, 346, 523. These latter facts weigh little on credibility, and plaintiff's purported job at AT&T has been discredited.

The ALJ also stated that, although Ms. Dixon testified that plaintiff never lived away from home and was unable to take care of himself, the record showed that plaintiff "attended college at Sacramento State and Arizona State away from home, that he attended college on a basketball scholarship and that he lived alone with his girlfriend apart from his mother where he was independent in the activities of daily living." AT 27. Similarly, the ALJ found that plaintiff "has exhibited an ability to get along with teammates and coaches as evidenced by his basketball scholarship." AT 27. In contrast, Ms. Dixon stated that plaintiff "was unable to maintain college and graduate due to his mental problems. He never received a basketball scholarship." AT 691.

Because the credibility determination relies in part on plaintiff's statements – that he worked at AT&T, attended two universities including Arizona State, and had a basketball scholarship – that plaintiff now insists were and delusional and have scant objective support in the record, it does not provide a "clear and convincing" basis for rejecting the statements of plaintiff and Ms. Dixon.

C. Medical Opinions

Plaintiff asserts that, in determining his residual functional capacity ("RFC"), the ALJ improperly credited the testimony of Dr. Simonds, a non-examining physician, over treating therapist Kathy Campbell and consultative examiner Dr. Timothy Canty.

Therapist Campbell examined plaintiff multiple times in 2010. The ALJ summarized her treatment citing a December 2012 letter in which she

> noted that the claimant was a client of hers for a period of six to

10

> eight months from 2010-2011 and that he presented with a variety of complaints, including intense mood swings, frequent changes in energy levels, episodes of sleeplessness, restlessness, excess energy, uncontrollable pacing, visual and auditory hallucinations, episodes of unexplained fear/terror, impulsive behavior, connected feelings of invincibility (i.e., repeatedly jumping out of moving cars into traffic, bringing strangers into the home late at night, even after being robbed as a consequence of this behavior); and inability to maintain a job due to these symptoms. Based on her mental status examination and review [in December 2012], MFT Campbell diagnosed the claimant with bipolar disorder, severe, with psychotic features . . . and a GAF score[2] of 38[.]

AT 20, 428-459. The ALJ also noted that earlier, in February 2010, MFT Campbell diagnosed plaintiff with schizophrenia, paranoid type, and a GAF score of 48.[3] AT 20, 672.

Dr. Canty conducted a consultative psychiatric evaluation of plaintiff in August 2010. AT 660-663. As summarized by the ALJ,

> Dr. Canty noted that the claimant's chief complaint was he gets frustrated easily and that he had a history of mental problems with a 'short fuse' being his main problem with maintaining work. It is noteworthy that despite seeing MFT Campbell on a regular basis and despite noting symptoms of irritability, variable moods, occasional auditory hallucinations and occasional delusions, he was not currently taking any prescribed medications. The claimant's mental status examination was also fairly benign with clear and cooperative attitude, behavior and speech, clear, logical and goal-oriented content of thought, appropriate mood and affect, full orientation and adequate memory and concentration. Based on his examination and review, Dr. Canty diagnosed the claimant with rule out schizophrenia . . . and a serious GAF score of 50[.] Dr. Canty opined that the claimant would not be able to participate in typical work . . . Dr. Canty, however, noted that with appropriate treatment and compliance to prescribed medications, his condition may improve and he may return to baseline functioning.

AT 21, 660-663.

---

[2] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A GAF of 31-40 indicates: "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school.)"

[3] A 41-50 rating indicates serious symptoms such as suicidal ideation, severe obsessional rituals, or serious impairment in social, work, or school functioning.

11

Plaintiff argues that, in contrast to Dr. Simonds' testimony that there were "gaps" in his mental health treatment prior to 2013 (AT 707-708), he was seen nearly two dozen times by MFT Campbell and a psychiatrist between February 2010 and October 2011. AT 469-497, 598-605. He cites Dr. Canty's August 2010 examination of plaintiff, concluding that plaintiff could not participate in typical work as "his emotional state is too labile." AT 663. Plaintiff also cites 2011 and 2012 clinic records in which he was diagnosed bipolar and his GAF ranged from 43 to 63. AT 338-362.

As requested by the Appeals Council Remand Order[4], the ALJ gave "much consideration" to Dr. Simonds' hearing testimony, which he summarized as follows:

> Dr. Simonds indicated that prior to January 2013, the claimant did not have regular psychiatric follow-up for his condition, and he had periods of noncompliance with taking his medications and periods of abusing alcohol. Dr. Simonds also noted that alcohol use diminishes the effect of psychiatric medications. Based on his review of the medical record prior to January 2013, Dr. Simonds opined that the claimant would be limited to simple one to two step tasks with no public contact from a mental standpoint.

AT 27. The ALJ noted that Dr. Simonds reviewed Dr. Canty's opinion and found it "not fully supported by the record." AT 23; see AT 711-714 (Dr. Simonds finds no clear evidence that plaintiff was unable to work due to illness rather than other factors).

Where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion should be upheld. Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record[.]") The findings of a non-treating, non-examining physician can amount to substantial evidence, so long as other evidence in the record supports those findings. Salee v. Chater, 94 F.2d 520, 522 (9th Cir. 1996). In this case, however, apparent flaws in the ALJ's credibility determination infect the overall RFC finding. While the above medical evidence bears on the Listings determination, the court need not reach the merits of plaintiff's RFC-related claims.

////

---

[4] See AT 37-39.

12

Based on the record as a whole and in light of apparent errors in the ALJ decision, it appears that plaintiff satisfies the criteria under Listing 12.05C. Thus plaintiff is entitled to summary judgment on this claim.

CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin.,, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record creates serious doubt as to whether plaintiff met the 12.05C listing criteria, requiring (at the least) a determination whether certain statements of plaintiff concerning his activities prior to age 22 were factual or delusional.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 17) is denied;

3. The Commissioner's decision is reversed;

////

4. This matter is remanded for further proceedings consistent with this order; and

5. The Clerk of the Court shall enter judgment for plaintiff and close this case.

Dated: August 28, 2017

/s/ Carolyn K. Delaney
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/showers0053.ssi.ckd

14